MEMORANDUM OPINION
 

 SULLIVAN, District Judge.
 

 This case arises from the alleged embezzlement of approximately five million dollars in union funds by officials of the Washington Teachers’ Union (“WTU”). Plaintiff in Civil Action No. 02-2536, Nathan Saunders, is a teacher of History and Government at Anacostia Senior Public High School and a member in good standing of the WTU. Mr. Saunders commenced this action on December 27, 2002, seeking compensatory and injunctive relief from officials of both the WTU and the American Federation of Teachers (“AFT”), the national union with which the WTU is affiliated. The AFT, in turn, initiated Civil Action No. 03-79 against officials of the WTU on January 17, 2003. Finally, a group of D.C. public school teachers now seek certification as a class to bring a separate action against officials of the WTU in Civil Action No. 03-261.
 

 The following motions are currently pending in Civil Action No. 02-2536:(l) plaintiffs Motion for Preliminary Injunction and Appointment of an Independent Monitor; (2) defendant AFT’s Motion to Dismiss; (3) defendant WTU Executive Board’s Motion to Dismiss; (4) defendant WTU Trustees’ Motion to Dismiss; and (5) renewed motion to intervene as plaintiffs filed by Mary Baird Currie
 
 et al.
 
 Proceedings are stayed as to all other defendants. There are currently no pending motions in the related ease of
 
 American Federation of Teachers v. Bullock et al.,
 
 03-79. Pending motions in Civil Action 03-261 have been denied without prejudice pending resolution of the issues before the Court in the present case. Accordingly, this memorandum opinion focuses exclusively on the motions pending in
 
 Saunders v. Hankerson,
 
 Civil Action 02-2356.
 

 I. BACKGROUND
 

 The Washington Teachers’ Union (“WTU”) is a five-thousand-member local union representing public school teachers and professionals employed by the Board of Education of the District of Columbia. First Am. Compl. ¶¶ 29, 81. The WTU is affiliated with the American Federation of Teachers (“AFT”), a national union representing education professionals across the country.
 
 Id.
 
 ¶ 82. The WTU, also known as Local # 6 of the AFT, is governed by the AFT Constitution and is expected to make
 
 “per capita
 
 ” dues payments of approximately $700,000
 
 per annum
 
 to the AFT.
 
 Id.
 
 ¶ 72. Members of the WTU, including plaintiff, are also members of the AFT.
 
 Id.
 
 ¶ 82.
 

 Between 1995 and July 2002, Barbara Bullock served as the elected President of the WTU. First Am. Compl. ¶¶ 1, 5, 106. Ms. Bullock was also elected to the position of Vice President of the AFT, and she served in that capacity from at least July 2000 to July 2002.
 
 Id.
 
 ¶¶ 15, 69. She has since resigned from both her Presidency of the WTU and her post on the AFT’s Executive Council.
 
 Id.
 
 ¶¶ 15, 106-107. During the time frame relevant to these actions, defendant Gwendolyn Hemphill served both as Ms. Bullock’s Special Assistant and as Legislative Representative for the WTU.
 
 Id.
 
 ¶¶ 1, 4, 122-23. Defendant Leroy Holmes was employed as Ms. Bullock’s personal chauffeur.
 
 Id.
 
 ¶¶ 1, 4. Defendant James Baxter served as the WTU’s elected Treasurer from July 1994 until he took a leave of absence as of September 2002.
 
 Id.
 
 ¶¶ 1,17,136.
 

 
 *XCIV
 
 Defendants Bullock, Baxter, Hemphill, and Holmes are alleged to have participated in a scheme to defraud the WTU to the tune of $5 million dollars, utilizing union funds to purchase luxury items for personal use.
 
 [1]
 
 Ms. Hemphill’s daughter and son-in-law, defendants Cheryl and Michael Martin, along with Mr. Martin’s business associate, defendant Errol Alderman, are also alleged to have participated in and benefited from the scheme both as individuals and through Expressions Unlimited, Michael Martin’s business.
 
 [2]
 

 Id.
 
 ¶ 4. Similarly, Ms. Bullock’s sister, Gwendolyn Clark, is alleged to have participated in and benefited from the scheme individually through a joint bank account shared with Ms. Bullock, as well as through her business, “Gwen’s of Columbia.”
 
 Id.
 
 Collectively, these defendants (Bullock, Baxter, Hemphill, Holmes, C. Martin, M. Martin, Errol Alderman, Gwendolyn Clark) are hereinafter referred to as “individual defendants.” The remaining organizational and institutional defendants
 
 [3]
 
 are alleged either to have acted in concert with these defendants, or to have been negligent in their responsibility to exercise oversight with respect to the activities of the WTU and its officials. Id. ¶¶ 2, 3.
 

 In April 2002, Ms. Bullock, without the approval of the WTU Executive Board, and without complying with the requirements of the WTU bylaws, authorized the District of Columbia Public Schools (“DCPS”) to deduct dues in the amount of $160.00 from each WTU member’s paycheck.
 
 Id.
 
 ¶ 31. As a result, $160.00 was deducted from plaintiff Nathan Saunders’ paycheck in July 2002.
 
 Id.
 
 ¶¶ 31, 33. Mr. Saunders subsequently contacted the WTU to inquire as to why his dues deduction was larger than usual, and was told that the DCPS was responsible for the improper deduction.
 
 Id.
 
 ¶¶ 34-35. He was also told that a faxed request for a refund to the WTU offices would result in a refund.
 
 Id.
 
 ¶¶ 34-35. Although plaintiff complied with these instructions, he was not refunded the amount of the deduction over and above his usual union dues until January 21, 2003, almost one month after he commenced this action.
 
 Id.
 
 ¶ 35. The Complaint also alleges that several other union members lodged complaints with the AFT in July 2002 regarding the unauthorized dues deduction. Based in part on these complaints by WTU members, as well as on a significant arrearage in per
 
 capita
 
 dues payments owed by the WTU to the AFT, in September 2002 the AFT initiated an investigation into the July 2002 dues deductions and the WTU’s finances.
 

 On October 23, 2002, “formal requests were made to Bullock, Baxter, and Hemp-hill to repay the WTU all of the Union funds expended by or caused to be expend
 
 *XCV
 
 ed by them for personal and otherwise unauthorized and/or non-Union purposes.”
 
 Id.
 
 ¶ 103. A second demand for payment was made on December 23, 2002.
 
 Id.
 
 ¶ 104. None of the individual defendants complied with these demands.
 
 Id.
 
 ¶ 106.
 

 In November 2002, plaintiff participated in drafting a letter to the WTU Executive Board and Board of Trustees requesting detailed information regarding the WTU’s financial status, as well as specific information regarding the processes through which the unauthorized July 2002 dues deduction took place, and by which teachers would be refunded excess deductions.
 
 Id.
 
 ¶¶ 40-42. On November 21, 2002, plaintiff organized and attended simultaneous demonstrations and pickets at the offices of the WTU and the AFT, through which he demanded full disclosure of the facts surrounding the unauthorized dues deduction and the resignation of Ms. Bullock, as well as an immediate election to fill the positions of WTU President, Vice President, and Treasurer.
 
 Id.
 
 ¶¶ 43-44, 46. Significantly, the press release issued in conjunction with the demonstrations demanded that the AFT account for its failure to detect financial improprieties within the WTU.
 
 Id.
 
 ¶ 45. These actions did not prompt refund of the improper dues deductions to WTU members.
 

 At a WTU General Membership Meeting held in or about November or December 2002, plaintiff introduced a motion to require repayment of all improperly deducted funds to union members, as well as an accounting of the local union’s current financial status.
 
 Id.
 
 ¶¶ 47-52. Although those motions were overwhelmingly approved by the general membership, the WTU Executive failed to comply within the time frames set forth therein.
 
 Id.
 

 On December 27, 2002, plaintiff, proceeding
 
 pro se,
 
 commenced Civil Action 02-2356 and filed a motion for a temporary restraining order or preliminary injunction, seeking immediate dissolution of the WTU Executive Board and Board of Trustees, as well as the immediate appointment of an independent monitor to (1) secure the WTU’s remaining assets and records, (2) provide full cooperation to law enforcement authorities in ongoing criminal investigations into the activities of Bullock, Baxter, Holmes and Hemphill, (3) complete audits of the WTU’s financial records as necessary, and (4) hold immediate elections for all offices.
 
 Id.
 
 ¶ 53. Additionally, plaintiff asked the Court to (1) impose fines on each of the responsible defendants, (2) mandate complete restitution, and (3) order the AFT to repay all
 
 per capita
 
 payments made by the WTU to the AFT during the period in which the embezzlement was taking place. At that time, neither the WTU Executive nor the AFT had initiated any legal action against any of the individual or institutional defendants.
 
 [4]
 

 Id.
 
 ¶ 54.
 

 Upon defendant AFT’s representations through counsel at the first status hearing held in Civil Action 02-2356 that the AFT had taken over the management of the WTTU’s assets and finances, was fully cooperating with law enforcement agencies, and had dissolved the existing Executive
 
 *XCVI
 
 Board, plaintiffs motion for injunctive relief was withdrawn.
 
 [5]
 
 1/07/03 Status Hearing, Civil Action No. 02-2356.
 

 The Court appointed counsel to represent plaintiff Saunders on January 21, 2003, and an Amended Complaint was filed with leave of the Court on February 5, 2003. A renewed motion for preliminary injunction was filed on March 3, 2003.
 

 II. PLAINTIFF’S CLAIMS
 

 Plaintiff brings this suit as a derivative action on behalf of the WTU pursuant to Fed.R.Civ.P. 23.1
 
 [6]
 
 and the Labor Management Reporting and Disclosure Act (“LMRDA”), 29 U.S.C. §§ 401, 501(b) (2004).
 
 [7]
 
 Plaintiff also avails himself of the citizen-suit provision of the Racketeer Influenced and Corrupt Organizations Act (“RICO”), 18 U.S.C. § 1964(c) (2004),
 
 [8]
 
 al
 
 *XCVII
 
 leging that the individual defendants formed an association-in-fact for the purpose of defrauding the WTU, in violation of the federal money-laundering statutes, 18 U.S.C. §§ 1956-57 and the LMRDA, 29 U.S.C. § 501(c). The First Amended Complaint charges all individual defendants with civil conspiracy, violations of RICO, and a civil RICO conspiracy. First Am. Compl. Counts XIV-XVI. Among the individual defendants, Bullock, Baxter, and Hemphill, as well as James Goosby, as an agent of the WTU, are also alleged to have breached fiduciary and statutory duties to plaintiff and members of the WTU.
 
 Id.
 
 ¶¶ 101-102; Counts I, III. Additionally, plaintiff has asserted common law claims of breach of fiduciary duty, fraud, conversion, unjust enrichment, and aiding and abetting, against various individual defendants.
 
 Id.
 
 Counts VIII-XII. Finally, plaintiff charges defendant Independence Federal Savings Bank (“IFSB”) with both common law negligence and aiding and abetting.
 
 Id.
 
 Counts XVII-XVIII. Proceedings against individual defendants, as well as against defendants Goosby and IFSB, are currently stayed in Civil Action No. 02-2356 until resolution of pending motions to dismiss by the AFT, WTU Executive Board, and WTU Board of Trustees.
 

 With respect to the institutional defendants, plaintiff asserts claims against the entire WTU Board of Directors and the WTU Board of Trustees, on the grounds that those local officials who were not directly participating in the embezzlement scheme nevertheless failed to fulfill their fiduciary duty to oversee the assets of the WTU to the benefit of the membership.
 
 [9]
 

 Id.
 
 ¶¶ 3, 85-87, 89-98, Count I. Specifically, plaintiff contends that the WTU Executive Board and the Board of Trustees failed to put in place necessary checks and balances to preclude individual defendants Bullock, Baxter, Holmes and Hemphill from converting union funds and filing false financial reports with the United States Department of Labor. Plaintiff submits that these institutional defendants failed to ensure that the WTU employed an accountant between 1996 and 2002, and failed to require that the members of the Executive Council charged with handling the local’s funds be bonded.
 
 Id.
 
 ¶¶ 87-88, 90-98,109,126,138, 209, 210, 211, 215-217. Further, plaintiff alleges that defendant Esther Hankerson, the WTU’s General Vice President during the relevant period, learned as early as 1997 of facts placing her on notice of improper use of union funds but failed to act on this knowledge.
 
 [10]
 

 Id.
 
 ¶¶ 3, 31.
 

 
 *XCVIII
 
 Additionally, plaintiff charges the Board of Trustees with failing to fulfill its duties under the WTU constitution and by-laws to “attest to the accuracy of all bank accounts of Local # 6 at the end of each fiscal year,” to “examine all financial records, receipts, expenditures, disbursements, vouchers, bills and statements,” and to prepare, in consultation with the Treasurer, an annual budget and quarterly reports to be presented to the Executive Board and the WTU membership.
 
 Id.
 
 ¶¶ 91-97.
 

 Finally, plaintiff maintains that the AFT bears significant responsibility for the individual defendants’ fraudulent actions because it failed to enforce provisions in the AFT Constitution requiring local unions to submit biennial audit reports and annual financial reports and to investigate WTU’s delinquency in payment of
 
 per capita
 
 dues to the national union.
 
 [11]
 

 Id.
 
 ¶¶ 70-80, 261. Accordingly, plaintiff brings this suit on behalf of the WTU and its membership, pursuant to Section 501 of the LMRDA and Section 301 of the LMRA, against the AFT and its Secretary-Treasurer, Edward J. McElroy, in his official capacity, for breach of fiduciary duty and breach of contract.
 
 Id.
 
 ¶ ¶ 75-79, Counts II, IV. Plaintiff also asserts common law breach of fiduciary duty and negligence claims against the AFT.
 
 Id.
 
 Counts VI and VII.
 

 In support of his breach of fiduciary duty and breach of contract claims against the AFT, plaintiff points to provisions in the AFT constitution (“Constitution”) requiring union locals to submit an annual financial statement, including statements of assets and liabilities, as well as of income and expenses, within five months of the end of the local’s fiscal year.
 
 Id.
 
 ¶ 62, 224. Plaintiff also relies on a provision added to the Constitution in 1993, which requires local unions to submit biennial audits to both their members and the AFT.
 
 Id.
 
 ¶ 63, 224. Plaintiff maintains that the AFT Executive Council has the power to enforce its constitutional requirements by revoking the charter of a local union, either for non-payment of
 
 per cap-ita
 
 dues to the AFT dr based on a finding that the existence of the local is “detrimental to the development of democracy in education.”
 
 Id.
 
 ¶¶ 66-67. Alternatively, the AFT may, by vote of its Executive Council, investigate a local union when the local’s conduct “fails to comply with the provisions of the AFT constitution or when the local’s conduct is not in harmony with the principles of the AFT and tends to bring the AFT into disrepute.”
 
 Id.
 
 ¶ 68. Plaintiff further asserts that the AFT has assumed a duty to union locals by holding itself out as a source of guidance and information with respect to union local financial management through documents found on its website.
 
 Id.
 
 ¶ 64.
 

 In the First Amended Complaint, plaintiff seeks permanent injunctive relief precluding defendants Bullock, Baxter, Hemp-hill, Holmes, Hankerson, as well as the members of both the Executive Board and Board of Trustees, from holding any elected or appointed office in the WTU for the
 
 *XCIX
 
 next ten years. He further claims, on behalf of the WTU, compensatory damages against individual defendants, including defendant Goosby, the WTU Board of Trustees, and the WTU Executive Board for all sums wrongfully converted from the WTU treasury between 1995 and 2002, as well as compensatory damages against IFSB for negligent payment of checks drawn on the WTU account. Additionally, plaintiff asks this Court to award treble punitive damages against individual defendants pursuant to 18 U.S.C. § 1964(c) of RICO. Finally, plaintiff requests, on behalf of the WTU, that the AFT be required to make restitution of all sums paid as dues by the WTU to the AFT from 1995 to 2002.
 

 In his pending motion for preliminary injunctive relief, as well as in his prayer for permanent relief, plaintiff also asks the Court, pursuant to Fed.R.Civ.P. 53, to appoint, at AFT’s expense, an independent monitor with no prior affiliation with the AFT or WTU to oversee the actions of the AFT Administrator selected by the national union to manage the day to day activities of the WTU. Such an independent monitor would report to the Court and the WTU membership with respect to whether the AFT’s actions are in the best interests of the WTU.
 

 Finally, plaintiff currently seeks temporary injunctive relief barring the AFT from (1) settling any claims or cases relating to the WTU; (2) employing former Officers or Executive Board Members of the WTU; (3) making any expenditures outside the WTU’s ordinary course of business, including payment of delinquent
 
 per capita
 
 dues from the WTU to the AFT; or (4) altering the WTU’s constitution.
 

 III. MOTIONS TO INTERVENE
 

 A number of individuals, associations, and organizations have sought to intervene or serve as
 
 amici curiae
 
 in this case.
 

 A group of D.C. Public School teachers, hereinafter referred to as Mary Baird Currie,
 
 et al,
 
 filed a motion styled as one to intervene and for appointment of counsel on January 27, 2003. The Court construed the motion as one for leave to serve as
 
 amicus curiae,
 
 and subsequently granted it on March 10, 2003. 3/10/03 Status Conference, Civil Action No. 02-2356. Marie Baird Currie,
 
 et al
 
 renewed their motion to intervene as plaintiffs and for appointment of counsel on April 18, 2003.
 

 Upon careful consideration of the motion, Fed.R.Civ.P. 19, and the controlling case law, and for the reasons given in open court during the status hearing held in this case on March 10, 2003, the renewed motion to intervene is hereby DENIED WITHOUT PREJUDICE. It appears to the Court that putative intervenors’ interests are adequately represented by plaintiff Nathan Saunders, and nothing in the renewed motion has persuaded it otherwise. However, Marie Baird Currie,
 
 et al
 
 remain welcome to continue to participate in the case as
 
 amicus curiae,
 
 at their own expense.
 

 Another group of D.C. Public School teachers, hereinafter referenced as Cynthia Greene
 
 et al,
 
 also sought the Court’s permission to intervene in this action. For essentially the same reasons, their motion to intervene was construed as a request to serve as
 
 amicus curiae
 
 and granted at the March 10, 2003 status hearing. Messrs. Roland Ashby-Rier and Alfred Hubbard
 
 [12]
 
 made a submission to this Court as
 
 amicus curiae
 
 on January 17, 2003 and asked the
 
 *C
 
 Court appoint counsel to represent their interests in this action. While the Court welcomes their submissions as
 
 amid,
 
 it stated at the January 21, 2003 status hearing and reiterated at the March 10, 2003 status hearing that it is unable to provide for appointment of counsel to represent them.
 

 Finally, the American Federation of Labor — Congress of Industrial Organizations (“AFL-CIO”), the largest national confederation of labor organizations in the United States, filed an unopposed motion to serve as
 
 amicus curiae,
 
 which was granted on April 29, 2003. 4/29/03 Order, Civil Action No. 02-2356.
 

 IV. AFT MOTION TO DISMISS
 

 A.
 
 Unions as defendants to Section 501(b) action
 

 As an initial matter, defendant AFT correctly asserts that claims made pursuant to Section 501 of the LMRDA cannot be brought against labor organizations such as the AFT, but rather can be made only against officers acting in their official capacities. Section 501 imposes liability only on individual union officers for breach of fiduciary obligations, and does not impose any duties on labor organizations as such. Accordingly, plaintiffs Section 501(b) claims against the AFT in Count II of the First Amended Complaint must be DISMISSED.
 

 The language of Section 501(a) refers to the duties of officers, agents, shop stewards, and other representatives of a labor organization and “each such person,” thereby supporting the proposition that the statute is intended to reach only natural persons. 29 U.S.C. § 501(a) (2004). Additionally, the Second, Third, and Eighth Circuits have expressly held that suits under the LMRDA can be brought only against union officials.
 
 See, e.g., Sabolsky v. Budzanoski,
 
 457 F.2d 1245, 1249 (3d Cir.1972) (holding that local and international unions could not properly be joined as defendants in an action brought pursuant to Section 501(b));
 
 Pignotti v. Local No. 3 Sheet Metal Workers’ Int’l Ass’n,
 
 477 F.2d 825, 832 (8th Cir.1973) (“all parties agree that neither the International Association nor Local No. 3 have violated § 501 as that section imposes liability only on the individual union officials.”). As was recently stated by the United States District Court for the Southern District of New York,
 

 There is simply nothing in the statute that permits Section 501 claims against a labor organization for alleged violations of individual officers and/or representatives. The courts of appeal that have addressed this issue have repeatedly held that an action against a labor organization under Section 501(b) is not cognizable as a matter of law.”
 

 Commer v. McEntee,
 
 145 F.Supp.2d 333, 339-40 (S.D.N.Y.2001).
 

 Indeed, plaintiff does not dispute that Section 501 does not provide for relief against a union as a separate legal entity, conceding that its provisions reach only individual union officers. PL’s Opp’n at 19. Nevertheless, he asserts a theory, admittedly novel, that an international union can be sued under Section 501 provided that it is found to have acted as the agent of a local union.
 
 Id.
 

 In support of this theory, plaintiff cites to case law from the U.S. Supreme Court holding that unions are held to the same standards of common law agency as corporations.
 
 United Mine Workers v. Coronado Coal Co.,
 
 259 U.S. 344, 395, 42 S.Ct. 570, 66 L.Ed. 975 (1922). Under plaintiffs theory, the AFT is a proper defendant to plaintiffs LMRDA claims because WTU’s decision to affiliate with the AFT is equivalent under the law of agency to authorizing
 
 *CI
 
 the AFT to act as the WTU’s agent within the parameters set forth in the AFT Constitution. Pl.’s AFT Opp’n at 16-19. Plaintiff further opines that WTU members exercise control over the AFT by introducing and passing resolutions at annual AFT conventions, and by maintaining the right to withdraw affiliation from the AFT.
 
 Id.
 
 at 17. Under plaintiffs theory, it then follows that if the AFT failed to satisfactorily perform the fiduciary duties it assumed when it became the WTU’s agent, the AFT is a proper defendant to plaintiffs LMRDA claim.
 

 The AFT agrees that agency rules apply in the labor context but argues that plaintiffs novel theory fails to address the weight of authority holding that a federal court does not have jurisdiction to entertain a Section 501(b) suit against a “labor organization.” AFT Reply at 2. Both parties proceed to argue at length about whether a national union can be held liable for the actions of a local affiliate under the related but distinct theory that the local is an agent of the national. It appears that issue has been squarely resolved by the U.S. Supreme Court’s opinion in
 
 Carbon Fuel v. United Mine Workers of America,
 
 which states that an international union cannot be held liable for the acts of its local under an agency theory absent evidence that the international “instigated, supported, ratified, or encouraged the local’s activity, or that the local acted pursuant to agreement with the international.”
 
 Carbon Fuel Co. v. United Mine Workers of Am.,
 
 444 U.S. 212, 218, 100 S.Ct. 410, 62 L.Ed.2d 394 (1979). The
 
 Carbon Fuel Co.
 
 Court expressly relied on Congress’ intent when enacting the Labor Management Relations Act (“LMRA”), 29 U.S.C. § 185, to limit the liability of international unions for the actions of their locals:
 

 In the face of Congress’ clear statement of the limits of an international union’s legal responsibility for the acts of one of its local unions, it would be anomalous to hold that an international is nonetheless liable for its failure to take certain steps in response to actions of the local. Such a rule would pierce the shield that Congress took such care to construct.
 

 Id.
 
 at 217-18, 100 S.Ct. 410. However, the authority narrowly defining the circumstances under which a national union can be held liable under the theory that a local is acting as the agent of an international union is of limited utility in addressing the theory advanced by plaintiff; namely, that the AFT was acting as the agent of a local union.
 

 Even assuming,
 
 arguendo,
 
 that plaintiffs maintain a viable theory that a national union could be held liable under the circumstances presented by this case as an agent of the local union, plaintiffs allegations are insufficient to establish the requisite agency relationship. There is nothing in the First Amended Complaint suggesting that the WTU exercises any greater control over the actions of the AFT than does any other local union through the national union’s internal democratic structures, or that any specific agreement existed wherein the AFT agreed to act as the WTU’s agent under specific circumstances, such as the negotiation of a collective bargaining agreement. Therefore, plaintiffs LMRDA claims against the AFT as a legal entity must fail as a matter of law.
 

 Accordingly, Count II of plaintiffs First Amended Complaint is hereby DISMISSED as to defendant AFT. However, the authority discussed above does not bar the remainder of plaintiffs claims against AFT Secretary-Treasurer McElroy, acting in his official capacity, as well as against officers of the WTU Executive Board and Board of Trustees in their official capacities.
 

 
 *CII
 
 B.
 
 Subject Matter Jurisdiction
 

 The AFT next contends that this Court lacks subject matter jurisdiction to adjudicate plaintiffs claims against remaining defendants because plaintiff has failed to satisfy the jurisdictional pre-requisites for bringing claims pursuant to the LMRDA
 
 [13]
 
 and the LMRA.
 
 [14]
 

 1.
 
 LMRDA claim,
 

 Section 501 (a) of the LMRDA defines the fiduciary duty of officers, agents and other representatives of labor organizations, requiring each person to hold union money or property for the sole benefit of the union and its members. 29 U.S.C. § 501(a) (2004). In the event that the union fails to seek appropriate relief against a person alleged to have violated this fiduciary duty, Section 501(b) permits any individual member of the union to sue that person for the benefit of the organization. 29 U.S.C. § 501(b);
 
 Yager v. Carey,
 
 910 F.Supp. 704, 726 (D.D.C.1995).
 

 Before an action may be brought pursuant to Section 501(b), a plaintiff must: (1) demonstrate that he has requested that the union or its governing officers bring legal action, recover damages, secure an accounting, or obtain other appropriate relief; (2) that upon request, the union refused or failed to do so within a reasonable time; and (3) obtain leave of the court to bring an action with a showing of good cause. 29 U.S.C. § 501(b);
 
 see also O’Connor v. Freyman,
 
 Civ. A. No. 85-0566, 1985 WL 121 at *1 (D.D.C. May 31, 1985).
 

 a. Demand and Refusal
 

 “To file an action under [Section 501] the plaintiff must first request action by the union and be refused...”
 
 Bocchiere v. Biller,
 
 Civ. A. No. 87-1804, 1988 WL 163032 at *2 (D.D.C. April 29, 1988),
 
 vacated on other grounds,
 
 1990 WL 67713 (D.C.Cir. May 16, 1990). “[T]he provision of the statute requiring [a] demand to sue is mandatory and ... its requirements cannot be met by anything short of an actual request. An allegation of the futility of such a request will not suffice.”
 
 O’Connor v. Freyman,
 
 1985 WL 121 at *2;
 
 see also Flaherty v. Warehousemen, Garage & Serv. Station Employees’ Local Union No. SSL
 
 574 F.2d 484, 487 (9th Cir.1978) (same);
 
 Yager v. Carey,
 
 910 F.Supp. at 727 (“some form of request that the union or a governing member of the union bring the action is a requirement that cannot be waived as futile.”).
 

 i. Demand
 

 Defendant AFT argues that plaintiff failed to make a specific and unequivocal demand that the AFT file suit against individual defendants. The AFT overstates the threshold presented by this jurisdictional requirement.
 

 It is important to note that the demand required by Section 501(b) is not necessarily one to pursue legal action; rather, and this jurisdictional prerequisite may be satisfied by a demand for an accounting or “other appropriate relief.”
 
 See
 
 29 U.S.C. § 501 (“when ... the labor organization or its governing board or officers refuse or fail to sue or recover damages
 
 or secure an accounting or other
 
 
 *CIII
 

 appropriate relief mthin a reasonable time
 
 after being requested to do so by any member of the labor organization, such member may sue ... or secure an accounting or other appropriate relief for the benefit of the labor organization.”)(emphasis added). The AFT’s arguments fail to take into account that the demand requirement may be satisfied by a request for “other appropriate relief.”
 
 See
 
 AFT Mot. at 15, AFT Reply at 14 (submitting that a union member must “request that the union or its governing officers bring legal action or secure an accounting [for a violation of Section 501(a) ].”)
 

 Plaintiff alleges in his amended complaint that he took a number of actions, which, either individually or in the aggregate, are sufficient to satisfy the demand element of Section 501(b)’s jurisdictional prerequisite as to the WTU Executive Board, the WTU Board of Trustees, and the AFT:
 

 (1) In July 2002, plaintiff telephoned the WTU to inquire as to the basis for the deduction of $160 in union dues from his paycheck and requested a refund. As instructed by the person who answered his call, he subsequently faxed a written request for a refund. First Am. Compl. ¶¶ 35-36;
 

 (2) Having failed to receive a refund or a satisfactory reason for not receiving one, four months later, in November 2002, plaintiff participated in drafting a letter to the WTU, defendant Hankerson, who at the time was serving as the interim president of the local, the WTU Executive Board, and the WTU Board of Trustees. This letter not only reiterated plaintiffs demand for a refund of the improper deduction, but also inquired as to why the deduction was made and why it was not immediately corrected when the error was reported. First Am. Compl. ¶¶ 40-42;
 

 (3) On November 21, 2002, plaintiff organized and participated in a protest outside the AFT offices. A press release was issued in conjunction with the demonstration, demanding full disclosure of the circumstances leading up to the improper dues deduction. The press release also demanded that the positions of WTU President, Vice President, and Treasurer be filled immediately through an election and stated that “the American Federation of Teachers must respond to the entire membership as to how the parent body, which has ultimate oversight responsibility, could allow such alleged improprieties to exist and yet still expect dues paying members to continue to trust their leadership.” First Am. Compl. ¶¶ 43-46;
 

 (4) At a WTU membership meeting that took place in or about November or December 2002, plaintiff proposed and voted in favor of a motion demanding an immediate refund of the improper dues deduction and requesting, by no later than December 13, 2002, a written statement from the WTU Executive Board stating when the refund would be mailed and describing the process by which refunds were allocated. First Am. Compl. ¶¶ 47-52.
 

 The AFT responds that all of these actions amount to, at most, a request for repayment of the improper deduction and a request for more information regarding how the improper deduction came about. It further notes that both of these demands have now been satisfied: WTU members were reimbursed the full amount of the improper deduction, and the results
 
 *CIV
 
 of the AFT’s forensic audit of the WTU’s finances were disseminated by the AFT after this action was commenced. AFT Reply at 12 n. 9. It further maintains that none of plaintiffs actions were specific enough to amount to a request that either the WTU or the AFT bring suit pursuant to Section 501 against any party.
 
 Id.
 
 Finally, defendants submit that plaintiff does not allege that he, or any other member of the WTU, made any complaint to the WTU Executive Board, the Board of Trustees, or the AFT specifically referencing the WTU’s failure to generate annual financial statements or perform biennial audits as required by the AFT constitution, which is ultimately the basis of the breach of fiduciary duty claims plaintiff now asserts.
 

 Neither party cites to controlling authority addressing the question of whether the actions described by plaintiff are sufficient to meet the “demand” element of Section 501(b)’s jurisdictional prerequisites. Plaintiff cites persuasive authority from this District in support of his contention that he need only to have asked both the WTU and the AFT to take action, and these two entities need only have failed to take some action to address the concerns he raised, in order to meet the jurisdictional requirements of Section 501(b).
 
 See
 
 PL’s AFT Opp’n at 19-22. For instance, in
 
 Trine Council v. Biller,
 
 the United States District Court for the District of Columbia found that a letter to a national union president stating “[w]e of the Providence (Rhode Island) local protest the purchase of a new building until after the National Convention (and) until we know exactly how much it will cost and what our dues will be” was sufficient to satisfy the jurisdictional prerequisites of Section 501(b).
 
 Trine Council v. Biller,
 
 Civ. A. No. 82-1232, 1982 WL 2038 at *2 (D.D.C. May 26, 1982). Although the court in
 
 Cefalo v. Moffett
 
 did not outline precisely how it did so, it found that “both plaintiffs complained of the wrongs which they now assert in this litigation to the Union and the Union took no action to redress those wrongs,” and held this action to be sufficient to meet Section 501(b)’s jurisdictional requirements.
 
 Cefalo v. Moffett,
 
 333 F.Supp. 1283, 1285 (D.D.C.1971).
 

 The Second Circuit has held that -a detailed letter alleging constitutional violations at a meeting of a union local, demanding that a vote be declared void, and requesting a “complete accounting” of union expenditures, as well as a “true and accurate accounting” of all benefits paid to union officers and staff, is sufficient to meet Section 501(b)’s demand requirement.
 
 Dinko v. Wall,
 
 531 F.2d 68, 70-73
 
 &
 
 n. 2 (2d Cir.1976). Similarly, the Third Circuit held in
 
 Sabolsky v. Budzanoski
 
 that a letter to the United Mine Workers of America’s International President, which did not contain a request to bring suit but did seek internal relief, represented a sincere effort to obtain internal compliance with the International’s constitution.
 
 Sabolsky,
 
 457 F.2d at 1252;
 
 see also Woods v. Local
 
 #
 
 12 Sheet Metal Workers Int’l Assoc.,
 
 438 F.Supp. 578, 580 (W.D.Pa.1977) (“charge letter” filed pursuant to internal union procedure, followed by union finding of “not guilty” and appeal to the general President of International Union as to which President had made no finding as of date of suit, was sufficient to satisfy Section 501(b) jurisdictional prerequisite);
 
 but see Flaherty v. Warehousemen, Garage & Serv. Station Employees’ Local Union No. 334,
 
 574 F.2d at 487 (finding plaintiffs oral and written demands that it be provided with financial records of the local insufficient to justify grant of leave to file Section 501(b) action);
 
 Cassidy v. Horan,
 
 405 F.2d 230, 232 (2d Cir.1968) (demand that officers return cer
 
 *CV
 
 tain sums of money did not satisfy statutory demand to sue).
 

 There are several competing policy considerations underlying resolution of the question of whether plaintiffs actions are sufficient to meet the demand requirement enshrined in Section 501(b). First, “[because section 501(b) extends the jurisdiction of the federal courts, it is strictly construed.”
 
 Flaherty,
 
 574 F.2d at 487;
 
 O’Connor v. Freyman,
 
 1985 WL 121 at *1. Moreover, Congress has expressed a clear preference for internal resolution of union matters.
 
 See, e.g., Wirtz v. Local 153, Glass Bottle Blowers Ass’n,
 
 389 U.S. 463, 470-71 n. 10, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968). Furthermore, “Section 501(b) was designed to prevent the filing of harassing and vexatious suits brought without merit or good faith against union officials.”
 
 Sabolsky,
 
 457 F.2d at 1253. The Court is mindful of these considerations.
 

 Nevertheless, the express purpose of Section 501 is to enforce the fiduciary obligations of union officers to union members, and the statute is clearly designed to protect union members from precisely the type of conduct at issue here.
 
 See O’Connor v. Freyman,
 
 Civ. A. No. 85-0566, 1985 WL 121 at * 2, 4. Section 501 should therefore be read and applied accordingly. Plaintiff took the actions in question
 
 pro se
 
 and in the good faith belief that they represented sufficient demands on both the WTU and the AFT. A finding that they are sufficient to constitute a demand for “appropriate relief’ would be consistent with the purposes of the Act.
 
 See id.
 
 at * 2;
 
 Dinko,
 
 531 F.2d at 73.
 

 Ultimately, the Court is persuaded that the following language contained in the press release plaintiff participated in drafting, issuing, and distributing in conjunction with the November 2002 demonstration outside the AFT’s offices is sufficient to constitute a demand for “appropriate relief’ with respect to the AFT and Secretary General McElroy:
 

 the American Federation of Teachers must respond to the entire membership as to how the parent body, which has ultimate oversight responsibility, could allow such alleged improprieties to exist and yet still expect dues paying members to continue to trust their leadership.
 

 First Am. Compl. ¶¶ 43-46. While it is true that the release does not cite to the exact provisions of the AFT Constitution to which plaintiff now cites, the quoted language does allege, essentially, that the AFT has a fiduciary duty it failed to fulfill and does ask that the national union account for its actions, or failure to act, to the WTU membership. As a result, the Court finds that plaintiff “complained of the wrongs which [he] now assert[s] in this litigation to the Union and the Union took no action to redress those wrongs.”
 
 See Cefalo,
 
 333 F.Supp. at 1285. Plaintiffs actions are therefore more analogous to those deemed sufficient to meet the demand element of Section 501’s jurisdictional requirement in
 
 Trine Council, Sabolsky,
 
 and
 
 Dinko
 
 than to those found to be deficient in the cases relied upon by defendants. Similarly, the Court finds that the letter sent by plaintiff to the WTU, defendant Hankerson, the WTU Executive Board, and the WTU Board of Trustees in November 2002 was sufficient to meet Section 501’s demand requirement with respect to those defendants.
 
 See Dinko,
 
 531 F.2d at 70 n. 2, 73.
 

 ii. Refusal
 

 The AFT next argues that, even if plaintiffs’ actions are construed as a demand sufficient to satisfy Section 501(b)’s jurisdictional requirements, the national union has in fact subsequently brought an action against what it considers to be “all
 
 *CVI
 
 of the bad actors here,” namely the individual defendants, thereby precluding a finding that the refusal requirement has been met. AFT Reply at 12 n. 9. Indeed, the AFT commenced an action against the very same individual defendants named by plaintiff in his suit, asserting essentially the very same claims.
 
 See
 
 Am. Compl. Civil Action No. 03-79.
 

 However, as plaintiff correctly points out, the AFT has consistently denied any oversight responsibility with respect to the WTU, and has not, over a year after plaintiff made his requests, brought any action against any of its own officers for “allowing] such alleged improprieties to exist.”
 
 See
 
 First Am. Compl. ¶¶ 43-46. Moreover, the AFT has not brought suit against the WTU Executive Board as an entity, nor against the WTU Board of Trustees. The Court holds such circumstances to be sufficient to constitute a “refusal” with respect to these defendants within the meaning of the jurisdictional prerequisites.
 

 A more difficult question is presented by the fact that the AFT did, subsequent to the filing of plaintiffs suit, take formal action against the individual defendants named in plaintiffs claims, as well as against defendant IFSB. AFT also argues that this is not a case where the AFT ignored or responded negatively to plaintiffs requests — the AFT initiated an investigation as early as September 2002, approximately one month after WTU members began to complain to both the WTU and the AFT about the unauthorized $160 dues deduction. AFT Mot. at 19. As soon as the investigation was complete, and the AFT was assured that sufficient grounds existed, it filed suit against individual defendants, and, on January 27, 2003, it placed the WTU in “administra-torship” pursuant to the AFT Constitution.
 
 Id.
 

 It is plaintiffs contention that the AFT’s failure to take any action between July 2002 and January 2003 against individual defendants and defendant IFSB beyond initiation of an investigation into WTU’s financial practices, as well as the AFT’s continuing failure to take action against WTU and AFT officers responsible for ensuring that WTU complied with the provisions of the AFT Constitution constitute “failure to act” within a reasonable time with respect to those defendants. Plaintiff further argues that the AFT’s subsequent commencement of an action against individual defendants
 
 after
 
 plaintiff initiated his suit neither precludes a finding that he had satisfied the jurisdictional prerequisites at the time the suit was filed nor requires that plaintiffs action now be dismissed as to individual defendants. Pl.’s AFT Opp’n at 22 n. 8 (citing to
 
 O’Connor v. Freyman,
 
 1985 WL 121 at *2, 5, in which union was granted leave to intervene in plaintiffs action).
 

 The Court finds that the refusal element has been met with respect to defendant McElroy, and LMRDA’s jurisdictional prerequisites have thus been satisfied as to claims brought against the AFT Secretary-Treasurer. Similarly, defendants the WTU Executive Board and the WTU Board of Trustees have both denied responsibility and failed to take action in response to plaintiffs demands as described herein, thereby satisfying the LMRDA’s jurisdictional prerequisites as to them.
 

 b. Good cause
 

 Contrary to the AFT’s assertion, plaintiff has already sought, and this Court has already granted, leave pursuant to 29 U.S.C. § 501(b) to file his First Amended Complaint.
 
 See
 
 AFT Mot. at 20; AFT Reply at 14; Pl.’s Motion for Leave to File Verified First Amended Compl.; 2/5/03
 
 *CVII
 
 Order, Civ. A. No. 02-2536. In so doing, the Court found that “good cause” existed for Mr. Saunders to file a complaint pursuant to § 501(b). Accordingly, the Court will construe AFT’s arguments with respect to the existence of this jurisdictional prerequisite as a motion to' vacate the Court’s finding of “good cause.”
 

 The purpose of the “good cause” requirement embodied in Section 501(b) is to “ensure that union officials will not be subjected to harassing law suits.”
 
 Bocchiere v. Biller,
 
 1988 WL 163032 at *2 (D.D.C. April 29, 1988);
 
 see also O’Connor v. Freyman,
 
 1985 WL 121 at *3. In order to demonstrate “good cause”, a plaintiff must show “a reasonable likelihood of success and, with regard to any material facts he alleges, must have a reasonable ground for belief in their existence.”
 
 Bocchiere v. Biller,
 
 1988 WL 163032 at *3;
 
 see also O’Connor v. Freyman,
 
 1985 WL 121 at *4 (noting that the policies underlying Section 501 and the requirement that a plaintiff make a showing of good cause “include the supervision of union officials in the exercise of their fiduciary obligations and the protection, through a preliminary screening mechanism, of the internal operation of unions against unjustified interference and harassment.”). The standard is not an onerous one.
 
 See George v. Local Union No. 639,
 
 98 F.3d 1419, 1423 (D.C.Cir.1996) (rejecting authority requiring plaintiff to demonstrate a “high probability that ... allegations of impropriety are true” and concluding that “good cause” requirement sets a low threshold).
 

 The good cause requirement is clearly met insofar as plaintiffs First Amended Complaint is concerned. “In deciding whether plaintiff has made a good cause showing, it is inappropriate for the court to resolve complex questions of law going to the substance of the case. Issues of this kind should be appraised only on motion for summary judgment or after a trial at which the parties and the Court can have the benefit of a complete inquiry assisted by such pretrial discovery as may be undertaken.”
 
 O’Connor v. Freyman,
 
 1985 WL 121 at * 5;
 
 see also George v. Local Union No. 639,
 
 98 F.3d at 1422 (“it is inappropriate at the good cause stage for the district court to consider ‘defenses which require the resolution of complex questions of law going to the substance of the case.’ ”)(internal citations omitted). It is enough that, taking all facts and circumstances into consideration, including plaintiffs efforts to invoke internal remedies, his demands on the union, refusal of the union to act in accordance with those demands, plaintiffs reasonable likelihood of success, and his reasonable ground for belief in his claims, the Court “determines that plaintiff has alleged at least a color-able claim ....”
 
 O’Connor v. Freyman,
 
 1985 WL 121 at * 5;
 
 see also George v. Local Union No. 639,
 
 98 F.3d at 1422 (“the good cause requirement of section 501(b) sets a low threshold”).
 

 At the time that it initially granted leave to file the First Amended Complaint, the Court found that plaintiff had established “good cause” under the standard set forth in the authority cited above. The AFT has not advanced any facts or arguments persuading the Court that this decision was in error. Accordingly, any motion by defendants to vacate the Court’s finding that plaintiff has established “good cause” to bring suit pursuant to Section 501(b) is hereby DENIED.
 

 2.
 
 LMRA Claim
 

 a. Breach of labor peace
 

 Defendant AFT argues that, because the breach of the AFT Constitution alleged by plaintiff does not threaten labor peace, but rather concerns only internal
 
 *CVIII
 
 union matters, the Court does not have subject matter jurisdiction to hear plaintiffs LMRA claim. However, any such prerequisite to assertion of an LMRA claim was abrogated by the U.S. Supreme Court’s decision in
 
 United Ass’n of Journeymen and Apprentices of Plumbing and Pipefitting Industry of the United States and Canada v. Local 334,
 
 452 U.S. 615, 622-27, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981) [hereinafter
 
 “Plumbers & Pipefit-ters
 
 ”], and therefore the Court need look no further to determine whether the alleged breach of the AFT Constitution has any such impact.
 

 Relying on a case that did not involve construction of the LMRA, the AFT submits that, because § 301 of the LMRA extends federal jurisdiction over union matters, it should be narrowly construed. AFT Mot. at 29 (citing
 
 Hardin v. City Title Escrow Co.,
 
 797 F.2d 1037, 1040 (D.C.Cir.1986)). AFT further argues against expansive interpretation of a court’s jurisdiction under § 301 by citing to “a longstanding federal policy of noninterference in the internal affairs of union and labor matters.” AFT Mot. at 29 (citing
 
 Wirtz v. Local 153 Glass Bottle Blowers Ass’n,
 
 389 U.S. 463, 470-71 n. 10, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968)). Based on these policy considerations, the AFT contends that only those breach of union contract cases involving external disputes should fall within federal jurisdiction.
 

 However, the Supreme Court addressed this argument in its opinion in
 
 Plumbers & Pipefitters,
 
 stating that “[tjhere is an obvious and important difference between substantive regulation by the National Labor Relations Board of internal union governance of its membership, and enforcement by the federal courts of freely entered into agreements between separate labor organizations.”
 
 Plumbers & Pipefitters,
 
 452 U.S. at 626, 101 S.Ct. 2546. Cases to the contrary cited by AFT pre-date the Supreme Court’s decision in
 
 Plumbers & Pi-pefitters. See
 
 AFT Mot. at 29, citing
 
 1199DC, Nat’l Union of Hospital and Health Care Employees v. Nat’l Union of Hospital and Health Care Employees,
 
 394 F.Supp. 189, 191 (D.D.C.1975),
 
 aff'd,
 
 533 F.2d 1205, 1207 (D.C.Cir.1976).
 
 [15]
 
 Finally, it goes without saying that the U.S. Supreme Court’s failure to mention the “significant impact” requirement in an opinion issued after
 
 Local SSI
 
 lends far greater support to plaintiffs assertion that the requirement has been abrogated than to AFT’s contention that it has not.
 
 See
 
 AFT Mot. at 29. In the absence of any such jurisdictional requirement under current law, the Court need not consider the issue any further.
 

 
 *CIX
 
 b. Exhaustion of Administrative Remedies
 

 AFT next argues that the Court does not have jurisdiction to entertain plaintiffs Section 301 claims because he has failed to exhaust administrative remedies. AFT Mot. at 28. However, one of the cases relied upon by the AFT involves the specific context of prosecution of grievances against an employer under a collective bargaining agreement.
 
 See Republic Steel Corp. v. Maddox,
 
 379 U.S. 650, 652, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965);
 
 see also Compofelice v. United Food and Commercial Workers, Local 400,
 
 Civ. A. No. 80-0046, 1980 WL 2167 at *3 (D.D.C. Oct.10, 1980) (requiring exhaustion of internal remedies in suit brought against union pursuant to § 301 for breach of duty of fair representation). Neither party has cited to any authority setting forth an exhaustion requirement for claims brought pursuant to § 301 of the LMRA for breach of a union constitution. It is therefore questionable whether such a requirement exists at all, and, if so, whether it is limited to exhaustion of remedies provided for by the AFT Constitution itself.
 
 See Vaca v. Sipes,
 
 386 U.S. 171, 184 n. 9, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).
 

 In any event, plaintiff correctly asserts that no internal procedures are set forth in either the AFT Constitution or the WTU Constitution and by-laws for resolution of the type of complaint raised by plaintiff here. Pi’s AFT Opp’n at 4. There being no administrative procedures to exhaust, the Court finds that there are no jurisdictional bars to consideration of plaintiffs Section 301 claim.
 

 C.
 
 Procedural requirements for derivative actions
 

 Fed.R.Civ.P. 23.1 sets forth the following procedural requirements for bringing a derivative action on behalf of an unincorporated association:
 

 (1) the complaint must be verified and must allege
 

 (a) that the plaintiff was a member at the time of the transaction of which the plaintiff complains and
 

 (b) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have;
 

 (2) the complaint must allege with particularity the efforts made by the plaintiff to obtain the action the plaintiff desires from the directors, and the reasons for the plaintiffs failure to obtain the action or for not making the effort;
 

 (3) the plaintiff must “fairly and adequately represent the interests of the ... members similarly situated in enforcing the right of the corporation or association.”
 

 Fed.R.Civ.P. 23.1;
 
 see also Levant v. Whitley,
 
 755 A.2d 1036, 1049-50 (D.C.2000) (interpreting identical local rule). The AFT does not dispute that the plaintiff has met the first requirement, but contends that he has failed to meet the latter two.
 

 1.
 
 Demand on the Board
 

 Plaintiff contends that he has satisfied Rule 23.1’s demand requirement by making numerous requests to directors and officers of the WTU to remedy the July 2002 unauthorized dues deduction, account for how the deduction came about, and provide an accounting of the local’s current financial status. AFT does not dispute that plaintiff made these demands on the WTU but maintains that he failed to make a demand on the AFT, thereby defeating his invocation of Rule 23.1. The Court finds that any further demands on either the WTU Executive Board, Board of Trustees, or the AFT would have been futile
 
 *CX
 
 within the meaning of the procedural requirements of Fed.R.Civ.P. 23.
 

 General allegations that a plaintiff has attempted to alert the membership to issues of misuse of accounts are insufficient to meet Rule 23.1’s requirement that the plaintiff plead with particularity any efforts he made to demand that the WTU or the AFT pursue legal action against individual and institutional defendants.
 
 See Levant,
 
 755 A.2d at 1050. “However, Rule 23.1 permits a plaintiff to plead futility in making the demand on the board of directors or comparable authority.”
 
 Id.
 
 Also, “[i]t is well settled that the question whether a plaintiff has shown that the demand requirement is excused is committed to the sound discretion of the trial court.”
 
 Smith v. Gordon,
 
 668 F.Supp. 520, 522 (E.D.Va.1987).
 

 In the majority of jurisdictions, a plaintiff must make specific allegations of bias or self-dealing on the part of directors in order for a demand on the directors to be futile, whereas in the minority of jurisdictions, plaintiff need allege only that a board of directors approved the alleged wrongdoing.
 
 Smith v. Gordon,
 
 668 F.Supp. at 522-23. “Under the law of this jurisdiction, plaintiffs can prove the futility of exhausting their union remedies in two ways: (1) through inference from the circumstances surrounding the grievance process, and (2) through concrete evidence of personal animus.”
 
 Pierce v. Bahr,
 
 Civ. A. No. 96-680, 1996 U.S. Dist. Lexis 6488 at *14 (D.D.C. May 9, 1996). Plaintiff has made sufficient and particularized allegations of wrongdoing by a number of WTU Directors and has alleged acquiescence of the remaining Directors as well as the WTU Board of Trustees, thus giving rise to a permissible inference that these individuals would be biased with respect to any request that they take action against themselves.
 
 See Smith,
 
 668 F.Supp. at 523.
 

 Similarly, plaintiff has made specific allegations of bias against the AFT and its Secretary Treasurer James McElroy, suggesting that a demand against these parties would also be futile; for instance, plaintiff has alleged that McElroy served on the same AFT Executive Council as Barbara Bullock and that the AFT has repeatedly denied responsibility for oversight of the WTU. It can easily be inferred from AFT’s dismissive response to plaintiffs contentions that Secretary-Treasurer McElroy bore any responsibility for ensuring that AFT received biennial audits and annual financial statements from the WTU, as well as from its failure to answer Mr. Saunders’ November 2002 demand that the AFT account for how the events underlying this action could have taken place under its watch, that any demand on the AFT that it bring legal action against Secretary-Treasurer McElroy would have been futile.
 

 AFT does not address plaintiffs futility argument, but rather erroneously relies on the D.C. District Court’s opinion in
 
 Pierce v. Bahr
 
 for the proposition that, if the Court finds that plaintiffs LMRDA claim suffers from a jurisdictional defect based on plaintiffs failure to make a demand to sue relevant union officials, then
 
 a fortiori,
 
 plaintiffs Rule 23.1 derivative action must fail.
 
 See
 
 AFT Mot. at 36 (citing
 
 Pierce v. Bahr,
 
 1996 U.S. Dist. Lexis 6488 at *15). However, this proposition misstates the holding in
 
 Pierce,
 
 in which none of the plaintiffs invoked Fed.R.Civ.P. 23.1. Rather,
 
 Pierce
 
 holds that, to the extent that one plaintiffs claim is derivative
 
 of another plaintiff’s LMRDA claim
 
 relating to inspection of documents, it too must fail where the first plaintiff failed to exhaust internal union remedies with respect to that demand. 1996 U.S. Dist. Lexis at
 
 *CXI
 
 *15. In any event, the Court having found that plaintiff has satisfied the demand and refusal requirements of Section 501, this argument is unavailing.
 

 Accordingly, the Court finds that plaintiff has satisfied the second prong of the procedural requirements for bringing a derivative action pursuant to that Rule.
 

 2.
 
 “Fairly and Adequately Represent”
 

 The AFT contends that Mr. Saunders does not “fairly and adequately represent” the interests of WTU members. AFT Mot. at 35-36. In support of this contention, the AFT cites solely to the representations of counsel for putative intervenors and
 
 amici
 
 in this action, who have vaguely intimated that Mr. Saunders represents a “previous regime” of the WTU.
 
 Id.
 
 Plaintiff correctly points out that defendants offer neither an explanation of what this means nor any evidence to support the allegation. Pl.’s AFT Opp’n at 30.
 

 The defendant in a derivative action bears the burden of establishing that plaintiff does not “fairly and adequately represent” similarly situated members.
 
 See Levant,
 
 755 A.2d at 1049. Furthermore, in derivative actions brought pursuant to Fed.R.Civ.P. 23.1, the trial court need not make a preliminary affirmative determination that the plaintiff will fairly and adequately represent the interests of similarly situated people as it must do in class actions.
 
 See id.
 
 A trial court’s decision in this regard is reviewed for abuse of discretion.
 
 See id.
 
 at 1049-50.
 

 While factors such as “economic antagonism” and the “use of the derivative action as leverage in a corporate or associational struggle” may render a particular plaintiff an inappropriate representative in a Rule 23.1 action, the AFT has by no means alleged facts sufficient to even suggest that these factors are present here. The record is devoid of any indication that Mr. Saunders stands to benefit unduly either economically or in terms of “leverage” in some sort of leadership “struggle” within the association by bringing this action. Given that all WTU members were subject to the exact same improper dues deduction, and that any existing or future vacancies in WTU offices will be filled through standard election procedures, there is no basis for making any such inference.
 
 See
 
 First Am. Compl. at ¶ 31, AFT Const, art VI § 15(d).
 

 Conversely, plaintiff points out that he has vigorously prosecuted this action on behalf of the WTU membership, initiating the case a month before the AFT saw fit to bring its claims against the individual defendants, securing
 
 pro bono
 
 representation, and holding an open meeting with other union members to hear their concerns. Pl.’s AFT Opp’n at 29-30.
 

 Under these circumstances, the Court finds that the third requirement for invocation of Fed.R.Civ.P. 23 has been met.
 

 Having thus disposed of defendants’ multiple procedural challenges, the Court will now consider the merits of defendants’ motions to dismiss.
 

 D. SECTION 501 CLAIM
 

 With respect to plaintiffs remaining claim against AFT Secretary-Treasurer McElroy in his official capacity, defendant AFT contends that plaintiff has failed to establish that Secretary-Treasurer McEl-roy owed any fiduciary duty to WTU local union members. AFT Mot. at 11-14.
 

 As an initial matter, the AFT contends that, in order for an officer of a national union to owe a fiduciary duty to members of an affiliated local union, the national union must exercise virtually “autocratic” control over the finances of the local union. AFT Mot. at 11 (citing
 
 International Un
 
 
 *CXII
 

 ion, United Mine Workers of America v. District 50, United Mine Workers of America,
 
 435 F.2d 421, 429 (D.C.Cir.1970));
 
 see also Aho v. Bintz,
 
 290 F.Supp. 577, 580 (D.Minn.1968) (finding that officers of International occupied a position of trust with regard to the local and its members where defendants could be considered agents of the local because they serviced the local, attended its meetings, advised its officers, and talked directly with the employer, becoming “quasiofficers” or at least representatives of the local). Although it is a national labor organization, the AFT describes itself as essentially an amalgam of autonomous entities, emphasizing that its locals are independently certified by labor boards and are assigned distinct employer identification numbers by the IRS. AFT Mot. at 3. AFT affiliates’ collective bargaining agreements are negotiated exclusively by the locals and designate the locals, rather than the AFT, as the members’ representatives.
 
 Id.
 
 The AFT maintains that it does not sign, review, administer or exercise any control over these agreements.
 
 Id.
 
 Finally, each local is governed by its own constitution and bylaws, as well as the national AFT constitution.
 
 Id.
 
 The AFT does concede that it provides member locals with certain services, including assistance and training for professional development of teachers and classroom employees, advocacy on behalf of members before Congress and the Executive Branch, financial support for legal actions brought by locals, and assistance with organizing new members.
 
 Id.
 
 at 3-4. Nevertheless, the AFT maintains that it exercises no direct oversight over the operation of its locals.
 
 Id.
 
 at 4.
 

 Plaintiff disputes the existence of a standard requiring that an officer of an International Union exert “autocratic control” over the finances of a local before any fiduciary duty to members of that local is triggered. He correctly asserts that the D.C. Circuit in
 
 District 50
 
 looked only to the “Landrum-Griffith Act” (“LMRDA”) as a potential source of fiduciary obligations imposed on the national toward the local and did not examine a national union’s constitution.
 
 See District 50,
 
 435 F.2d at 430-31. Significantly,
 
 District 50
 
 did not involve a suit pursuant to the LMRDA and therefore cannot impose any controlling requirements with respect to the degree of control that an international officer must exercise over a local’s finances in order to be held liable pursuant to Section 501(b).
 
 Id.
 

 The third opinion relied on by AFT for the proposition that no fiduciary duty on the part of international officials exists absent exercise of “autocratic control” over local finances is completely inapposite, because the court there simply denied a local union’s motion to amend its complaint to refashion claims made pursuant to the LMRDA’s “Union Bill of Rights,” embodied in 29 U.S.C. § 411(c), as Section 501(b) claims.
 
 Local Union
 
 #
 
 575 v. United Ass’n of Journeymen and Apprentices of Plumbing and Pipe Fitting Industry of United States and Canada,
 
 995 F.Supp. 1151, 1163 (D.Colo.1998). In that case, the plaintiff was challenging a merger of union locals as violative of his rights as a union member. The Court found that plaintiff had not alleged that the International President was holding union funds for improper purposes, or that he had acted beyond his authority, in bad faith, or unreasonably in approving the merger, and therefore had not alleged a breach of fiduciary duty under Section 501(b).
 
 Id.
 
 Significantly, unlike the plaintiff in
 
 Local Union
 
 #
 
 575,
 
 plaintiff Saunders has arguably alleged that Secretary-Treasurer McElroy failed to hold union assets in accordance with the AFT Constitution by accepting WTU’s
 
 per capita
 
 payments to the AFT while failing to enforce the AFT Constitu
 
 *CXIII
 
 tion’s audit and financial statement requirements.
 

 It appears, therefore, to be an open question as to whether, on the facts of this case, the degree of the AFT Secretary-Treasurer’s involvement in the financial affairs of AFT locals gives rise to a fiduciary duty pursuant to Section 501(b). AFT has cited no authority
 
 requiring
 
 that an international union exercise “autocratic control” over a local before a fiduciary duty to local members on the part of international officers attaches. The
 
 Aho
 
 court did not set forth a rigid requirement that the precise facts extant in that case be present for an international officer to be found to owe local members a fiduciary duty.
 
 Aho v. Bintz,
 
 290 F.Supp. at 580. Rather, it only held that such a duty existed under the circumstances at issue in that case.
 

 The Court need not, however, reach the issues of whether to apply the “autocratic control” standard or whether plaintiffs allegations are sufficient to meet it. Plaintiff correctly points out that, as a member of the WTU, he was also a member of the AFT. He further contends that, as a result, AFT officers, and the Secretary Treasurer in particular, owe a fiduciary duty to plaintiff and other WTU members. Pl.’s AFT Opp’n at 13;
 
 see Aho v. Bintz,
 
 290 F.Supp. at 580 (“[a]n argument can perhaps be made that the statute in fact allows suit against officers and representatives of the International. By virtue of belonging to [the local] plaintiffs herein are members of [the International].”).
 

 The central issue posed by plaintiffs breach of fiduciary duty claim, then, is the scope of the fiduciary duty to its members imposed on the AFT by its constitution. Significantly, neither party cites to any authority addressing the nature of a national union’s duties where its constitution requires locals to submit a biennial audit and annual financial statements to the International Union.
 

 The AFT submits that the constitutional provisions on which plaintiffs claims rely do not impose any affirmative duties on the AFT to ensure that an audit is generated by each local biennially and submitted to the AFT national office, or that financial statements are produced annually and submitted to the Secretary Treasurer within five months of the end of the local’s fiscal year. The relevant constitutional provisions provide:
 

 Effective September 1, 1993, and at least every two years thereafter, each affiliated local and state federation shall convene a committee of at least three members to conduct an internal financial review according to a format to be determined by the AFT executive council, or the local or state federation shall contract for an outside audit that meets the standards of generally accepted accounting principles. Either of these reviews must be made available to its membership and
 
 provided to the national office
 
 by January 1,1994, and at least every two years thereafter AFT Const, art IV § 6 (emphasis added).
 

 Beginning January 1, 1971, each local shall submit a financial statement for the local, including a statement of assets and liabilities and a statement of income and expenses to the AFT secretary-treasurer within five months of the end of fiscal year for the local.
 

 AFT Const, art. IX § 8 (emphasis added).
 

 Rather, AFT’s is position that the Constitution contemplates that these documents be prepared for the benefit of the local membership, and that the AFT serve as a mere repository of this information for the benefit of the local members. AFT Mot.
 
 *CXIV
 
 at 23. Finally, the AFT submits that, in the absence of an affirmative duty to act, the AFT did not ratify or participate in individual defendants’ wrongful activities, and therefore cannot be charged with breach of a fiduciary duty.
 

 The national union does concede that it may make use of the documents from time to time for internal purposes such as making grants to locals or providing assistance, but it contends that such use does not impose any obligation to ensure that the documents are prepared and filed. Rather, the AFT analogizes these constitutional requirements to existing statutory requirements that locals file documents with the IRS and Department of Labor, which do not give rise to liability on the part of these federal agencies for failure to detect and prevent embezzlement by local officials should locals fail to file. AFT Mot. at 13 n. 5. AFT submits that the local alone is responsible for ensuring that audits take place and that the local exercises complete control over the records necessary to perform the audit.
 

 AFT further contends that the breach of fiduciary duty claim in Count VI, as well as the breach of contract claim in Count TV and the negligence claim in Count VII, to the extent they rely on the provisions of the AFT Constitution as the source of any duty assumed by the AFT, are pre-empted by Section 301 of the Labor Management Relations Act (LMRA). AFT Mot. at 22. Section 301 provides that
 

 Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter,
 
 or between any such labor organizations,
 
 may be brought in any district court of the United States having jurisdiction of the parties.
 

 29 U.S.C. § 185 (emphasis added).
 

 To the extent that plaintiffs breach of fiduciary duty claim is premised on the provisions of the AFT Constitution, AFT is correct, and the claim is pre-empt-ed by Section 301 of the LMRA.
 
 [16]
 
 Similarly, because the common law breach of contract and negligence claims asserted in Count VI and VII are also premised on violation of AFT’s alleged duties under the AFT Constitution, these claims are also preempted by § 301 and must be dismissed as such.
 

 E. Section 301 Claim
 

 AFT further argues that plaintiffs Section 301 claim must also be dismissed for lack of subject matter jurisdiction and failure to state a claim. AFT Mot. at 21. The jurisdictional issues having been addressed above, the Court finds that the AFT has failed to meet the liberal motion to dismiss standard, which provides that “the complaint should not be dismissed under Rule 12(b)(6) unless ‘it appears ‘beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,’ ’ ” on this issue.
 
 Warren v. D.C.,
 
 353 F.3d 36, 37 (D.C.Cir.2004) (citing
 
 Conley v. Gibson,
 
 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). On the facts alleged in the Complaint, drawing all inferences in favor of the plaintiff, the Court finds that plaintiff has stated a Section 301 claim.
 

 In essence, AFT argues that, notwithstanding the fact that article TV § 6 of its Constitution requires locals to submit a
 
 *CXV
 
 biennial audit to the national office, nothing in the language of that provision, or the remainder of the AFT Constitution, requires the AFT to review the audits submitted by the locals, “conduct an unprovoked investigation” of a local that does not submit such an audit, or take any other action with respect to the audits “beyond acting as a depository.” AFT Mot. at 23. It further contends that the Court cannot make the legal inference that the AFT owes WTU members any duty with respect to such audits, including the duty to investigate a local’s failure to provide an audit or perform one if a local does not comply with the AFT constitution, based solely on the AFT Constitution’s requirement that locals perform audits and provide the AFT with copies.
 
 Id.
 
 at 24-25. Rather, it contends that the AFT Constitution merely sets forth minimum requirements, consistent with federal laws, for the sole benefit of local members, and for which the AFT has no “policing” responsibility. AFT Reply at 9 n. 6.
 

 “General rules of statutory construction apply when interpreting a labor union’s constitution, including the rule that unless specifically defined, a word will be given its plain and ordinary meaning.”
 
 Local Union
 
 #
 
 575,
 
 995 F.Supp. at 1156. Courts generally defer to a union’s construction of its constitution unless it is manifestly unreasonable.
 
 Noble v. Sombrotto,
 
 260 F.Supp.2d 132, 136 (D.D.C.2003);
 
 see also
 
 AFT Const, art VI, § 10 (“The Executive Council shall have the power to interpret and enforce this constitution.”). The Third Circuit has cautioned, in the context of interpreting the obligations assumed by an international union in its constitution that
 

 [ijmposing upon an international union the legal obligation to protect union members from allegedly abusive tactics by local officers could alter the delicate balance between local unions and their internationals, to the sacrifice of local union independence.
 

 Brenner v. Local 514,
 
 927 F.2d 1283, 1292 (3d Cir.1991).
 

 The constitutional provisions relied on by plaintiff in this case are plainly mandatory, stating that “at least every two years ... each affiliated local ...
 
 shall
 
 conduct an internal financial review according to a format to be determined by the AFT executive council, or ...
 
 shall
 
 contract for an outside audit that meets the standards of generally accepted accounting principles ... these reviews must be made available to its membership and provided to the national office ...,” and that “each local
 
 shall
 
 submit a financial statement for the local ... to the AFT secretary-treasurer within five months of the end of the fiscal year for the local.” AFT Const, art IV, § 6; art. IX, § 8 (emphasis added). Plaintiff argues that, by imposing affirmative duties on its locals, the AFT in turn assumed affirmative obligations to enforce them.
 
 See
 
 PL’s AFT Opp’n at 7-8. However, the plain language of the Constitution is silent as to any such obligation.
 

 Indeed, plaintiff concedes that the AFT Constitution does not explicitly create a contractual obligation to enforce the audit and financial reporting requirements imposed on the locals. Pl.’s AFT Opp’n at 4, 5 (“the AFT’s Constitution does not expressly state what action the AFT will take if the officers of a local union flout the requirement that they submit the audit and financial statements”); (“the AFT Constitution does not explicitly require the AFT to enforce its audit provisions”).
 

 In the face of the absence of plain language in the AFT Constitution reflecting the obligation on which plaintiff bases his claim, he argues that the context of the AFT Constitution as a whole, which con
 
 *CXVI
 
 fers significant powers on the AFT to enforce the Constitution’s financial reporting requirements, ranging from investigation to imposition of an administratorship, to suspension or revocation of charter, suggests that the AFT had affirmative duties to act under the audit and financial reporting provisions. Pi’s AFT Opp’n at 6. Plaintiff also cites to affirmative acts by the AFT that he contends demonstrate an assumption of a duty to ensure that audits were performed, including publication of documents providing guidance to locals for conducting audits and maintenance of a financial services hotline for local officers. Pl.’s AFT Opp’n at 7. Plaintiff submits that the AFT Constitution as a whole, as well as the AFT’s conduct in holding itself out as a financial authority for locals, clearly support a construction of the AFT Constitution that leads to the conclusion that the AFT had an implied duty to enforce the financial reporting requirements it imposed on its locals. Pl.’s Opp’n at 7.
 

 The AFT responds that “retention of regulatory and supervisory powers” by the national union in its constitution “merely gave it a discretionary right, as distinguished from a duty, to intervene in the affairs” of the WTU.
 
 See Brenner v. Local 514,
 
 927 F.2d at 1292. One provision in the AFT Constitution analogous to the-one in question in
 
 Brenner
 
 provides that a local’s charter “may be suspended or revoked by the executive council when the existence of such local ... is detrimental to the development of democracy in education.” AFT Const, art IV § 8. Others provide that the AFT’s Executive Council “may authorize the president to appoint a committee of the executive council to conduct an investigation of a local.” AFT Const, art VI, § 14. Another states that the AFT “may establish an administrator-ship for the purpose of,
 
 inter alia,
 
 correcting financial malpractice or misappropriation or loss of funds.” AFT Const art VI, § 14. It is clear from the language used in these provisions, and particularly from the use of the word “may,” that these provisions create discretionary powers in the AFT.
 

 Nevertheless, plaintiff contends that disposition of cases requiring interpretation of a union constitution on a motion to dismiss is inappropriate, and that courts have recognized the need for discovery to ascertain the proper interpretation of a union’s constitution where it is silent on a pertinent question. Pl’s Opp’n at 8;
 
 see Noble,
 
 260 F.Supp.2d at 136 (facts underlying determination of whether a union’s interpretation of its constitution is reasonable may be the subject of discovery or genuine issues of material fact). Indeed, the case on which the AFT relies was decided on a motion for summary judgment, after full development of the factual record surrounding the adoption of the disputed provision.
 
 See Brenner v. Local 514,
 
 927 F.2d 1283. The Court concludes that it would benefit from similar development of the factual record in this case to elucidate the intentions of the parties with respect to the AFT’s enforcement obligations, if any, when the financial reporting provisions at issue here were adopted.
 
 See Noble,
 
 260 F.Supp.2d at 136. Accordingly, AFT’s motion to dismiss plaintiffs Section 301 claim is DENIED.
 

 F. Count V — Documents
 

 Plaintiff claims that he is entitled, pursuant to 29 U.S.C. § 431(c), to review documents and records necessary to verify the WTU’s financial reports to the Department of Labor. AFT responds that plaintiff has an obligation to exhaust reasonable union procedures before litigating his claims under § 431(c), noting that the First Amended Complaint has failed to allege that he has attempted to do so, or that the WTU or AFT have constrained
 
 *CXVII
 
 his right to inspect records. AFT Mot. at 31. Accordingly, AFT submits that Count V should be summarily dismissed.
 

 Plaintiff responds that he did make sufficient requests to inspect the documents of the WTU, both by letter sent in or about November 2002 to the WTU, and by way of the November 21, 2002 protest outside the offices of the AFT. Pi’s Opp’n at 25-26. Plaintiff further argues that no exhaustion requirement exists under the relevant statutory provision.
 
 Id.
 
 at 26-27.
 

 In light of the AFT’s representation that it “is prepared to make the WTU’s records available to plaintiff consistent with his rights as a WTU member” and that “no actual dispute exists,” plaintiffs claim under Count V is now moot. AFT Reply at 23 n. 19, 24. The AFT is hereby directed to make the relevant documents available to plaintiff for inspection.
 

 G. Independent Right of Action Pursuant to 29 U.S.C. § 411(a)(3)(A)
 

 Plaintiff submits that the only claims he brings pursuant to this provision are against Bullock and Baxter for increasing the dues of WTU members without authorization. PL’s AFT Opp’n at 27 n. 10. In view of the fact that plaintiff has received a full refund of the July 2002 unauthorized dues deduction of $160.00, this claim is now moot.
 

 Y. WTU EXECUTIVE BOARD MOTION TO DISMISS
 

 Plaintiffs First Amended Complaint asserts a single Count against the WTU Executive Board. In Count I, plaintiff alleges that members of the WTU Executive Board, in their official capacities as officers, agents, or representatives of the WTU, owed a fiduciary duty to the WTU and its members to “manage, invest, and expend the WTU’s money and property in accordance with the WTU’s constitution and by-laws.” First Am. Compl. ¶ 211. Plaintiff contends that the members of the WTU Executive Board who were not directly involved in the embezzlement of union funds breached their duties to the WTU and its members by:
 

 a. failing to ensure that Bullock and Baxter submitted accurate budgets and financial statements to the WTU’s members;
 

 b. failing to maintain adequate oversight of the activities of Bullock, Baxter, and Hemphill;
 

 c. failing to ensure that the officers of the WTU were adequately bonded; and
 

 d. otherwise failing to manage, invest, and expend the WTU’s money and property in accordance with the WTU’s constitution and by-laws.
 

 First Am. Compl. ¶ 217. Plaintiff asks this Court to issue an Order enjoining members of the WTU Executive Board from holding any elected or appointed office in the WTU for the next 10 years. Prayer for Relief (b).
 

 Members of the WTU Executive Board, in their official capacities, move to dismiss plaintiffs action against them in its entirety pursuant to Fed.R.Civ.P. 12(b)(1) and Fed.R.Civ.P. 12(b)(6). WTU Mot. at 1-2; WTU Mem. in Supp. of Mot. to Dismiss (‘WTU Mem.”) at 2. In support of its motion, the WTU Executive Board (“Board”) contends that plaintiff has failed to satisfy jurisdictional prerequisites to this court’s assertion of jurisdiction over this action pursuant to Section 501(b) of the LMRDA. WTU Mem. at 2.
 

 A.
 
 Background
 

 Plaintiffs First Amended Complaint alleges that the WTU Executive Board was the governing body of the WTU, with general oversight responsibilities. First.
 
 *CXVIII
 
 Am. Compl. ¶ 84. As part of these responsibilities, the Board “was required to maintain adequate oversight of the activities of individuals handling the WTU’s funds and to demand regular accountings of how those funds were being spent.”
 
 Id.
 
 ¶85. The WTU Constitution and by-laws authorized the Executive Board to hire and fire union employees, including the Treasurer and any accountant(s).
 
 Id.
 
 ¶ 86. Plaintiff alleges, on information and belief, that the Board failed to hire an accountant between 1996 and 2002.
 
 Id.
 
 ¶ 88.
 

 The Executive Board responds that it is composed almost exclusively of volunteers who are, for the most part, actively employed by the D.C. public school system. WTU Mem. at 3. It further submits that it has “limited authority” and meets only twice monthly.
 
 Id.
 
 Nevertheless, it acknowledges that the WTU Constitution and Bylaws require that it “take such action as may be necessary between meetings” of the Union, and confers on it the authority to establish committees deemed “necessary to carry on the functions of the organization.”
 
 Id.
 
 Further, the Board concedes that it has authority to hire employees but counters that the dismissal of professional or other employees is governed by contract and that it had no authority with respect to the Union’s elected officers.
 
 Id.
 

 B.
 
 Subject Matter Jurisdiction
 

 1.Public Sector Unions
 

 The WTU Executive Board initially maintained that the LMRDA does not apply to unions or members of unions consisting
 
 exclusively of
 
 public sector employees.
 
 See
 
 29 U.S.C. § 402(e) (definition of employers covered by the LMRDA “does not include the United States or any corporation wholly owned by the Government of the United States or any State or political subdivision thereof’); 29 U.S.C. § 402(f);
 
 Commer v. McEntee,
 
 145 F.Supp.2d 333, 338 (S.D.N.Y.),
 
 aff'd in part, vacated in part on other grounds,
 
 34 Fed.Appx. 802 (2d Cir.2002) (unpublished opinion). However, the Board subsequently waived this
 
 ground
 
 in its Reply brief. WTU Board Reply at 2.
 

 2.
 
 Demand
 

 Like the AFT, and relying on the same authorities, the Executive Board contends that plaintiff failed to make an actual demand upon the WTU to initiate legal action against officers of the Executive' Board. WTU Mem. at 6, 7. The Executive Board further urges that the demand requirement must be strictly construed as contemplating a demand to institute legal action, and cannot be excused on the grounds of futility.
 
 Id.
 

 Plaintiff again maintains that the series of actions he took between July 2002 and November 2002 in an effort to obtain restitution of the improper dues deduction and secure “internal union ‘housekeeping’ ” are sufficient to satisfy Section 501(b)’s demand requirement and states that the “WTU ignored ... repeated requests that it remedy the misconduct of which he complained.” Pl.’s Opp’n at 5-6. As of the date plaintiff filed his initial complaint against the Executive Board of the WTU, the WTU had taken no action whatsoever to refund improper dues deduction or provide any accounting for those deductions.
 
 Id.
 
 at 6.
 

 For the reasons previously set forth in Section IV B 1. A of this opinion, the Court finds that plaintiffs actions were sufficient to satisfy the demand requirement of Section 501 with respect to the WTU Executive Board.
 

 3.
 
 Refusal to act
 

 The WTU Executive Board contends that plaintiffs “conclusory statements”
 
 *CXIX
 
 that the “WTU Executive Board refused to address the concerns of Plaintiff and other WTU members regarding union financial activities” despite the adoption of a resolution at a general meeting requiring them to do so are insufficient to satisfy the “refusal” element of Section 501(b)’s jurisdictional requirements. Moreover, the Board contends that nearly all the relief sought in plaintiffs November 2002 letter to the WTU Executive Board has been obtained. WTU Reply at 8.
 

 Plaintiff concedes that the Board provided information sought by plaintiff “on or about January 6, 2003.” First Am. Compl. ¶ 52. The WTU Executive Board maintains that, to the extent any information was not provided, its members are entitled to rely on the fact that there are ongoing criminal investigations with which they do not want to interfere. WTU Reply at 8 n. 11. Additionally, the Executive Board points to the AFT’s forensic audit of the WTU finances as a source of a great deal of the information plaintiff sought in his November 2002 letter to the WTU.
 
 Id.
 
 at 8. Finally, the Executive Board emphasizes that plaintiff and all members of the WTU have received refunds of their wrongfully deducted dues. First. Am. Compl. ¶ 35-36. In other words, in the opinion of the Executive Board, all of plaintiffs demands on it have been met, and plaintiff therefore cannot maintain that those demands have been refused or that the WTU Board has failed to act.
 

 However, like the AFT, the WTU Executive Board continues to deny an oversight responsibility, or breach thereof, on its part. Because that aspect of plaintiffs demands as described herein have not been acted on by the WTU Executive Board to date, the Court finds that the refusal jurisdictional prerequisite of Section 501(b) has been met with respect to the WTU Executive Board.
 

 4.
 
 “Good cause”
 

 The Board does not cite to any authority addressing this argument that has not already been discussed in relation to AFT’s Motion to Dismiss. The Board simply suggests that, under the relevant standards, examining all the facts and circumstances of plaintiffs action, including (1) plaintiffs failure to invoke internal union remedies; (2) plaintiffs incoherent demands on the union; (3) the absence of any refusal by the union to act; (4) the fact that the AFT has filed and is vigorously prosecuting a suit against individual defendants; (5) the “palpable vitriol of some criticisms” made by plaintiff; and (6) the “significant” number of teachers seeking to intervene to oppose plaintiff serving as the WTU’s representative in this case, the Court should find that plaintiff has failed to establish “good cause” for granting leave to file a complaint pursuant to Section 501(b).
 

 For the reasons previously articulated in this memorandum opinion, the Court, upon careful reconsideration of its initial ruling granting plaintiff leave to file his First Amended Complaint upon a showing of “good cause,” finds that this requirement has indeed been met. The WTU Executive Board’s jurisdictional challenges suffering the same fate as those interposed by the AFT, the Executive Board’s Motion to Dismiss is DENIED.
 

 VI. WTU TRUSTEES’ MOTION TO DISMISS.
 

 A.
 
 Background
 

 Defendants John Donnelly, Urman Edwards, and John Traína are “retired D.C. Public School teachers who served as unpaid volunteer members of the WTU Board of Trustees.” Trustees Mem. at 3. The First Amended Complaint alleges that the Board of Trustees (“Trustees”)
 
 *CXX
 
 has oversight responsibilities for the WTU’s finances, and is required to monitor the local’s funds and financial records. First. Am. Compl ¶ 89-90. The Board of Trustees also has authority to demand regular accountings of how the WTU’s funds were spent.
 
 Id.
 
 at ¶ 90, WTU Constitution and Bylaws at art. VIII § 7(b). Perhaps most importantly, the Trustees are required to (1) consult with the WTU Treasurer in the preparation of quarterly reports, to which the signatures of the Trustees are to be affixed, (2) to present their findings to the Executive Board and the entire WTU membership; and (3) to attest to the accuracy of all WTU bank accounts at the end of the fiscal year. WTU Constitution and Bylaws at art. VIII § 7(b), (c). Plaintiff contends that the Trustees failed to perform these duties and therefore breached their fiduciary duties to the WTU and its members. First Am. Compl. ¶¶ 94-98.
 

 Trustees move to dismiss Count I pursuant to Fed. R. Civ. 12(b)(1) and Fed. R.Civ.P. 12(b)(6).
 

 Trustees first respond to plaintiffs allegations by pointing out that they were not provided with an office, desk, computer, or staff with which to perform the duties cited to by plaintiff. Trustee Mem. at 3. Rather, they contend that their roles were limited to approval of the annual budget, a document of no more than two pages created and prepared by Baxter, the WTU’s Treasurer.
 
 Id.
 

 B.
 
 Failure to state a claim
 

 Trustees next argue that plaintiff fails to state a claim against them. In so doing, they contend that plaintiffs allegations — using “amorphous language,” that they failed to exercise sufficient vigilance against the possibility that individual defendants, who were “longtime union stalwarts” and “widely regarded to be trustworthy reformers,” were embezzling funds from the WTU — are insufficient to state a claim for breach of fiduciary duty pursuant to Section 501(b). Trustees Mem. at 4. Furthermore, the Trustees contend that plaintiff has failed to allege how the performance of their duties, as outlined in the WTU Constitution and Bylaws, would have prevented the conduct of individual defendants, particularly given plaintiffs allegations of a highly secretive and tightly controlled “association in fact.”
 
 Id.
 
 at 5. Finally, the Board submits that plaintiff has failed to allege any conduct or knowledge on the part of Trustees suggesting that they could have discovered fraud but “turned a blind eye” to individual defendants’ activities.
 
 Id.
 

 Trustees further contend that the LMRDA was not intended to “punish innocent bystanders” but rather to root out embezzlement and misuse of union funds by officers.
 
 Id.
 
 They suggest, citing to
 
 Moran v. Flaherty,
 
 in which the court found that plaintiff had not demonstrated any factual basis for a claim that the local President had failed to adequately supervise an embezzling treasurer, that courts “have been reluctant to allow suits against innocent union officers.”
 
 Id. (citing Moran v. Flaherty,
 
 Civ. A. No. 92-3200 (PEL), 1993 WL 60898 at * 3, 9 (S.D.N.Y. Feb.26, 1993)). However,
 
 Moran
 
 does not stand for that proposition. Rather, it simply states that plaintiffs in that case failed to demonstrate any factual basis for their claim of inadequate supervision, leaving open the possibility that such a claim could be asserted upon demonstration of a sufficient factual predicate.
 
 Id.
 
 at * 9;
 
 see also Carr v. Learner,
 
 547 F.2d 135, 137 (1st Cir.1976) (holding plaintiff made insufficient showing that defendants had breached a fiduciary duty and that allegations of poor performance in the complex and adversarial context of collective bargaining is
 
 *CXXI
 
 insufficient to state a claim under Section 501).
 

 Conversely, plaintiff here has alleged, and Trustees have conceded, that there were a number of duties Trustees did not fulfill: preparation and publication of quarterly reports, attestation to the accuracy of local’s bank accounts at the end of the year, as well as oversight powers that they did not exercise (i.e., authority to demand accounting). Trustees Mem. at 3. Rather, it appears that Trustees in this case contented themselves with rubber stamping Baxter’s annual budget, citing individual defendants’ reputations and a lack of resources as justification for doing so. Such abdication of responsibilities and duties imposed under the WTU Constitution constitutes a classic example of breach of a fiduciary duty.
 

 Plaintiff correctly argues that there is no requirement in the statute or case law limiting liability under Section 501(b) to officers who actually misappropriate union funds for their own benefit. PL’s Opp’n at 4. In fact, the Southern District of New York recently denied summary judgment in favor of the president of a union local where plaintiff alleged that the defendant had failed to properly supervise the union bookkeeper, allowing the bookkeeper to close accounts without inquiring as to where the funds were transferred.
 
 Dunlop-McCullen v. Pascarella,
 
 Civ. A. No. 97-0195(PKL)(DFE), 2002 WL 31521012 at * 16 (S.D.N.Y. Nov.13, 2002). Plaintiff also correctly argues that there need not be any allegations that any of the individual defendants were connected with the “mafia” or had any criminal record in order for plaintiff to sufficiently allege that, had the Trustees exercised their duties diligently, they would have known of individual defendants’ wrongdoing. Pl.’s Opp’n at 6, n. 6. Rather, these simply represent circumstances that may be held to place union officials on notice, or give rise to a finding of willful blindness.
 
 Id.
 

 The duties plaintiff alleges were imposed on Trustees are precisely those contemplated by Section 501(b): the duty to monitor and oversee union funds. Plaintiff is also correct in his contention that he is not required to allege with specificity at the motion to dismiss stage how Trustees’ fulfillment of their fiduciary duties would have prevented the harm at issue, so long as reasonable inferences can be made that it would have. PL’s Opp’n at 2 n. 1. Accordingly, the Board of Trustees’ motion to dismiss for failure to state a claim is DENIED.
 

 C.
 
 Subject Matter Jurisdiction
 

 1. Demand and Refusal
 

 Like all other defendants, Trustees cite to this District Court’s decision in
 
 Yager v. Carey,
 
 as well as to the Southern District of New York’s decision in
 
 Commer v. McEntee,
 
 and assert that plaintiffs various courses of conduct do not amount to an “actual” demand “to initiate legal action.”
 
 See also Agola v. Hagner,
 
 556 F.Supp. 296, 301 (E.D.N.Y.1982) (holding that repeated requests for strike payments, followed by letter to international outlining failure to make strike payments and threatening to institute legal action were insufficient to satisfy demand requirement under
 
 Dinko v. Wall
 
 standard); Trustees Mem. at 8. However, the
 
 Dinko
 
 standard was rejected by D.C. Circuit in
 
 George v. Local Union No. 639. See
 
 98 F.3d at 1422 Plaintiff responds that the November 2002 letter he participated in drafting, which was addressed to the WTU Board of Trustees, among others, represents an adequate demand against these defendants, on which they failed to act within a reasonable time. Pl.’s Opp’n at 7.
 

 
 *CXXII
 
 For the reasons set forth with respect to the similar jurisdictional challenges posed by other defendants, the Court finds that Section 501(b)’s jurisdictional requirements have been met with respect to the WTU Board of Trustees.
 

 2. Good cause
 

 Trustees contend that plaintiffs’ “unadorned assertions” in Count I are insufficient to meet the good cause requirement set forth in Section 501(b) and that to allow them to do so would “eviscerate” the “prophylactic purpose” of the “good cause requirement.” Trustees Mem. at 12
 
 (citing Sabey v. Local 12230 of the United Steelworkers of America,
 
 Civ. A. No. 81-80e, 1982 WL 31338 at * 8 (W.D.N.Y. Mar.18, 1982)). For the reasons previously given, the Court will not reconsider its earlier ruling that plaintiff has satisfied Section 501(b)’s good cause requirement.
 

 VIL MOTION FOR PRELIMINARY INJUNCTION
 

 The AFT assumed administratorship over the WTU on January 27, 2003. On March 10, 2003, plaintiff moved for preliminary injunctive relief pursuant to Fed. R.Civ.P. 65 in the form of an Order enjoining AFT, as administrator of the WTU, from:
 

 i. Settling any claims or cases relating to the WTU;
 

 ii. employing any Officers or Executive Board Members of the WTU;
 

 iii. making expenditures on behalf of the WTU that are “outside the ordinary course of business,” including payment of delinquent back dues from WTU to the ATF;
 

 iv. altering WTU’s Constitution.
 

 Additionally, plaintiff asks the Court to appoint a monitor pursuant to Fed R. Civ. P. 53 at AFT’s expense to oversee AFT’s compliance with this injunctive relief and to ensure that the ATF acts in the best interests of the WTU in administering the local’s affairs. The monitor would provide regular reports and recommendations to the Court and the WTU membership.
 

 A.
 
 Background
 

 Plaintiff contends that, although AFT has assumed an administratorship of the WTU, AFT’s potential liability to the WTU for duties imposed by the AFT Constitution creates a conflict of interest warranting supervision of the AFT’s administration of the WTU by an independent monitor (“IM”) charged with protecting the WTU’s interests. Pl.’s Mot. for Prelim. Inj. (“Pl.’s Mot.”) at 1. As evidence of the need for independent monitoring of AFT’s administratorship of the WTU, plaintiff points out that, once it discovered individual defendants’ wrongdoing as early as July 2002, the AFT waited six months, until January 22, 2003, to assume an ad-ministratorship of the WTU. Pl.’s Mot. at 1. Similarly, he emphasizes that the AFT did not seek legal redress against individual defendants until January 2003 and did not add Independence Federal Savings Bank (“IFSB”) as a defendant until February 2003.
 
 Id.
 
 Perhaps most importantly, plaintiff complains that the AFT has yet to take action against any officers of the AFT, the WTU Executive Board, or the Board of Trustees with respect to their failure to exercise appropriate oversight over the WTU’s financial affairs.
 
 Id.
 
 Moreover, although it has disbanded the former Executive Board, the AFT retained former General Vice President Hankerson to serve as Interim President of the WTU, notwithstanding the fact that Ms. Hanker-son has admitted to having some knowledge as early as 1997 of Ms. Bullock’s fraudulent activities and to having failed to report them to anyone.
 
 Id.
 
 at 5 n. 2. Additionally, plaintiff alleges, citing to the
 
 *CXXIII
 
 forensic audit commissioned by the AFT, that the unauthorized dues deduction that sparked this litigation “coincided with large lump sum payments of delinquent per capita dues to the AFT.” Pl.’s Mot. at 4.
 

 Significantly, plaintiff does not challenge or seek termination of AFT’s administra-torship over the WTU.
 
 Id.
 
 at 2, 15. Rather, he concedes that the AFT has an important role to play as an administrator but maintains that members of the WTU are entitled to assurances that decisions made within areas in which the AFT may have a conflict of interest, including settlement of the WTU’s claims and future governance of the WTU, will be made in the best interests of the WTU members. Accordingly, he seeks oversight of AFT’s ad-ministratorship in “certain discrete areas” by a neutral third party with the power to make reports and recommendations to the Court. Plaintiff submits that his proposal would not lead to external interference in the AFT’s day-to-day management of the WTU’s affairs, but rather would focus on the larger decisions affecting the WTU’s future, ensuring transparency and accountability currently absent from the AFT’s administration of the WTU’s affairs.
 
 Id.
 
 at 15.
 

 B.
 
 Preliminary Injunction
 

 “The case law in this Circuit is well established that when considering a plaintiffs request for a preliminary injunction, the court must examine whether (1) there is a substantial likelihood of success on the merits, (2) plaintiff will be irreparably injured if the requested injunction is denied, (3) an injunction will substantially injure the opposing party and (4) the public interest will be furthered by issuance of the injunction.”
 
 AFL-CIO v. Chao,
 
 297 F.Supp.2d 155, 161 (D.D.C.2003) (citing
 
 Davenport v. Int’l Brotherhood of Teamsters,
 
 166 F.3d 356, 360 (D.C.Cir.1999)). Because it effectively disposes of plaintiffs motion, the Court will consider the irreparable harm prong of the preliminary injunction standard first.
 

 1.
 
 Irreparable harm
 

 The central premise for plaintiffs motion is that AFT is in essence partly responsible for the misappropriation of WTU funds by individual defendants because it breached obligations to the WTU membership set forth in the AFT Constitution. Assuming,
 
 arguendo,
 
 the validity of this proposition, plaintiffs claim for in-junctive relief still fails.
 

 Taking each of plaintiffs requested areas of concern in turn, with respect to financial matters, plaintiff alleges that in-junctive relief and appointment of an independent monitor are necessary to prevent the AFT from giving itself preference to the WTU’s other creditors to recover
 
 per capita
 
 dues owed by the WTU to the AFT. Pl.’s Mot. at 13. Additionally, plaintiff maintains that the AFT has not yet accounted for the significant payment of
 
 per capita
 
 dues made by the WTU to the AFT immediately prior to the unauthorized dues deduction.
 
 Id.
 
 Furthermore, one of the remedies plaintiff seeks for AFT’s negligence and breach of fiduciary duty is reimbursement of all
 
 per capita
 
 dues paid by the WTU during the time when AFT was negligent or in breach of its fiduciary duties. First Am. Compl.
 

 As an initial matter, the AFT argues that the LMRDA explicitly authorizes collection of the “normal per capita tax” by the national union during a period of trusteeship.
 
 See
 
 29 U.S.C. § 463. Moreover, it is undisputed that, from the moment the AFT took over the WTU local and imposed an administratorship on January 27, 2003, the AFT assumed a fiduciary duty under Section 501(a) toward the WTU member
 
 *CXXIV
 
 ship. Therefore, any harm to the WTU’s financial interests arising pursuant to the administratorship can be remedied through a future 501(b) suit, and any monies improperly paid by the WTU to the AFT during the course of the administra-torship could be recovered, thereby precluding a finding of irreparable harm.
 

 Plaintiff also alleges potential irreparable harm arising from the AFT’s retention of former General Vice President Ester Hankerson as Interim President of the WTU. Pl.’s Mot. at 14. However, the AFT represents that Ms. Hankerson is currently on a leave of absence and is no longer participating in the administration of the WTU, thereby eliminating any probability of irreparable harm associated with her tenure as Interim President. Opp’n at 18.
 

 Plaintiff next argues that, in at least some instances, the WTU would be irrevocably bound by actions taken by the AFT in its capacity as administrator of the WTU, such as settlement of claims against individual defendants, that would not be subject to collateral challenge in a suit pursuant to Section 501(b). Pl.’s Reply at 9. The AFT responds that no conflict of interest exists with respect to settlement of claims, because any desire on the AFT’s part to prioritize payment of WTU’s delinquent
 
 per capita
 
 dues to the AFT would place the AFT’s interests in alignment with those of the WTU membership — to obtain the maximum restitution possible from individual defendants. Opp’n at 17. The AFT further submits that, even if the AFT is liable to the WTU based on individual defendants’ misappropriation of funds, the AFT’s interests remain in obtaining the greatest settlement possible from the individual defendants.
 
 Id.
 
 Regardless of whether or not these arguments are accepted, plaintiff has not alleged any facts suggesting that he does not have an adequate remedy at law for any harm to the WTU’s interests under Section 501(b).
 

 Finally, with respect to plaintiffs concerns regarding potential changes to the WTU constitution during the period of the administratorship, the AFT submits that there is no threat of imminent harm, since there are “no plans at this time to alter the WTU Constitution.” The AFT provides further assurances that should any need to alter the WTU constitution arise in the future, the AFT will follow the regular procedures for such amendments, including a ratification vote by the full membership.
 

 Therefore, on the facts now before the Court, plaintiff has failed to establish that he will suffer irreparable harm absent entry of the injunctive relief he seeks and appointment of an Independent Monitor to ensure the AFT’s compliance therewith. Plaintiffs motion for a preliminary injunction is therefore properly DENIED.
 

 [1]
 

 . Mr. Holmes pled guilty to money laundering charges brought in connection with the facts underlying this case in February 2003. Carol Leonnig,
 
 Ex-DC Worker Admits Guilt in Teachers’ Union Scandal,
 
 WASH. POST, October 16, 2003, at B9. In October 2003, Ms. Bullock pled guilty to criminal charges of embezzlement.
 
 Id.
 

 [2]
 

 . Mr. Alderman and Mr. Martin also pled guilty to related charges in October 2003. Carol Leonnig,
 
 Ex-DC Worker Admits Guilt in Teachers’ Union Scandal,
 
 WASH. POST, October 16, 2003.
 

 [3]
 

 ."Institutional defendants” include former members of the WTU's Executive Board, sued in their official capacities, members of the WTU's Board of Trustees, sued in their official capacities, James Goosby, a tax preparer who prepared financial forms and tax schedules for the WTU between September 2001 and June 2002, Independence Federal Savings Bank, and the American Federation of Teachers. First Am. Compl. ¶¶ 24-28, 190-194, 196-206. As Mr. Saunders seeks to assert his claims as a derivative action on behalf of the WTU, the WTU is named as a nominal defendant.
 
 Id.
 
 ¶ 29.
 

 [4]
 

 . On January 17, 2003, upon completion and review of its forensic audit of the WTU, the AFT did bring suit on behalf of the WTU membership against those named as “individual defendants” in this action.
 
 Id.
 
 ¶ 55, Compl. Civil Action No. 03-79, Def. AFT’s Mot. to Dismiss ("AFT Mot.”) at 2-3. One of the “institutional defendants” in this action, Independence Savings Bank (IFSB), was subsequently added as a defendant in the AFT action. Am. Compl. Civil Action No. 03-79 (adding WTU as plaintiff and IFSB as defendant).
 

 [5]
 

 . Notwithstanding the AFT's performance of an audit of the WTU's finances, plaintiff maintains that the AFT has yet to fully account to the WTU membership for the funds paid by the WTU to the AFT with the July 2002 unauthorized dues deduction. First Am. Compl. ¶ 37. The AFT has represented that the WTU made a large payment of delinquent
 
 per cap-ita
 
 dues to the AFT immediately before the AFT became aware of the excess dues deduction.
 
 Id.
 

 [6]
 

 . Fed.R.Civ.P. 23.1 provides:
 

 In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains or that the plaintiff's share or membership thereafter devolved on the plaintiff by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff’s failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs.
 

 FedR. Civ. P. 23.1 (2004).
 

 [7]
 

 . The LMRDA provides, in relevant part:
 

 When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.
 

 29 U.S.C. § 501(b) (2004).
 

 [8]
 

 . The RICO statute provides, in relevant part, that
 

 Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no
 
 *XCVII
 
 person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.
 

 18 U.S.C. § 1964.
 

 [9]
 

 . It is important to note that plaintiff does not allege that individual defendants made improper expenditures with the Executive Board’s direct approval and authorization. First Am. Compl. ¶¶ 115, 120, 130, 132, 141-142.
 

 [10]
 

 . Specifically, Hankerson. has admitted to receiving a telephone call from the IFSB regarding an $8,000 WTU check payable to Bullock, which allegedly bore Hankerson’s signature. First Am. Compl. ¶ 185. Hanker-son told the IFSB that she had not signed the check, but nevertheless instructed the bank to pay it.
 
 Id.
 
 ¶ 186. Hankerson claims she later confronted Bullock about the forged check, and secured a promise from Bullock that the funds would be repaid.
 
 Id.
 
 ¶ 187. However, it appears that Hankerson failed to report the incident to the WTU membership, the Executive Board, or the AFT.
 
 Id.
 
 ¶ 188.
 

 [11]
 

 . Plaintiff alleges that, although the provisions of the AFT Constitution would have required that at least three audits of WTU finances be performed between 1996 and 2002, the AFT did not receive any audits from the WTU within the relevant time frame. First Am. Compl. ¶¶ 70, 78, 243. He also claims that the AFT did not receive timely and accurate financial statements from the WTU between 1996 and 2002 and that any financial statements provided during that time frame contained inaccuracies and discrepancies.
 
 Id.
 
 ¶¶71, 78, 244. Finally, plaintiff alleges, upon information and belief, that, by at least early 2002, the WTU became delinquent in payment of dues to the AFT.
 
 Id.
 
 ¶ 73, 261. Nevertheless, the AFT did not initiate any investigation into the WTU’s financial situation until September 2002, when a forensic audit was commissioned.
 
 Id.
 
 ¶ 74, 240, 245.
 

 [12]
 

 . Mr. Hubbard is also named as one of the proposed class representatives in the related case of
 
 Parker v. AFT,
 
 03-261.
 

 [13]
 

 .
 
 See
 
 29 U.S.C. § 501(b) (plaintiff must first make a demand on a labor organization or its governing board or officers and the organization or officers must refuse to act on the demand within a reasonable time).
 

 [14]
 

 .
 
 See Vaca v. Sipes,
 
 386 U.S. 171, 184 n. 9, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) (exhaustion of contractual remedies a prerequisite to Section 301 action).
 

 [15]
 

 . The AFT goes on to mischaracterize the D.C. Circuit's subsequent opinion affirming
 
 1199DC
 
 as "limiting and distinguishing” the Supreme Court's decision when, in reality, the Circuit's opinion also predates
 
 Plumbers & Pipefitters.
 

 AFT also relies on the distinction made by the Circuit in the
 
 1199DC
 
 opinion between suits brought by individual members against their unions for violations of union constitutions and suits by local unions to enforce international constitutions to breathe life into its jurisdictional argument. AFT Mot. at 29 (citing
 
 1199 DC, National Union of Hospital and Health Care Employees v. National Union of Hospital and Health Care Employees,
 
 533 F.2d at 1207-08);
 
 see also Plumbers and Pipefitters,
 
 452 U.S. at 627 n. 16, 101 S.Ct. 2546 ("We also need not decide whether individual union members may bring suit on a union constitution against a labor organization.”). The distinction the AFT seeks to make is irrelevant here, as plaintiff Saunders brings his suit as a derivative action on behalf of the local union, the WTU, placing the facts of this case squarely within the four comers of the Supreme Court’s decision in
 
 Plumbers and Pipefitters,
 
 in which a local union sought to enforce the terms of the international's constitution against the international.
 

 [16]
 

 .
 
 Plaintiff has cited a single case in response to AFT’s pre-emption argument, which cites no precedent and has been followed by no other court, and states only, in
 
 dicta,
 
 that "it is conceivable that the breach of fiduciary duty relationship might apply under appropriate circumstances in connection with a § 301 breach of contract claim.” PL's Opp'n at 28, n. 11.; AFT Reply at 22 n. 18.